**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **DISHODA ROZLKOVA,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-1193-KC** |
| | § | |
| **DEPARTMENT OF HOMELAND SECURITY,** | § | |
| | § | |
| | § | |
| **Respondent.** | § | |

**ORDER**

On this day, the Court considered Dishoda Rozlkova's Petition for a Writ of Habeas Corpus, ECF No. 3. For the following reasons, the Petition is **GRANTED IN PART**.

## I. BACKGROUND

### A. Arrival in the United States & Immigration Proceedings

On May 4, 2025, Dishoda Rozlkova entered the United States without inspection and was encountered by immigration authorities and detained. Resp. 3–4, ECF No. 9. She was then transported to Dona Ana County Detention Center for criminal proceedings. *Id.* at 4. On August 8, 2025, Rozlkova was returned to DHS custody. *Id.* She was subsequently served with a Notice to Appear and placed in removal proceedings. *Id.* Rozlkova was scheduled for a hearing before an Immigration Judge ("IJ") on June 4, 2026. *Id.* She also was scheduled for IJ hearings on August 31, 2026, and September 25, 2026. *See* 2d Resp. Ex. A, ECF No. 16-1; *id.* Ex. B, ECF No. 16-2.

Dishoda Rozlkova is detained at the El Paso Service Processing Center. Pet. ¶ 2. She argues that her detention is unlawful and asks the Court to order a bond hearing. *Id.* ¶¶ 6, 13.

### B. Procedural History

On April 24, 2026, Rozlkova filed her Petition. *Id.* On May 15, 2026, the Court ordered Respondents to show cause why the application for a writ of habeas corpus should not be granted. May 15, 2026, Order, ECF No. 7.

In answer to the Court's Show Cause Order, Respondents argue that Rozlkova, as an "arriving alien," has no statutory right to a bond hearing. Resp. 1–12. And that Rozlkova's detention does not violate due process because her "claim that detention during removal proceedings will be unconstitutionally prolonged is speculative." *Id.* at 22. The Court then ordered Respondents to file a status report by August 31, 2026, addressing whether Rozlkova was still in immigration detention, the status of Rozlkova's immigration proceedings, and any additional arguments or information relevant to this matter. May 27, 2026, Order, ECF No. 11. On August 31, Respondents filed their Second Response, ECF No. 16, responding, albeit obliquely, the Court's instructions.

## II. ANALYSIS

Rozlkova argues that the length of her detention—now sixteen months—has become so prolonged that it amounts to a due process violation to continue to detain her without an individualized custody determination.[1]

Individuals detained at the border and never released may bring a claim of prolonged detention in the pre-removal order context. *See, e.g.*, *Arshakyam v. Warden*, No. 25-cv-1780, 2026 WL 143143 (E.D. Cal. Jan. 20, 2026); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838 (E.D. Va. 2020); *N.M.Z. v. Wolf*, No. 20-cv-24, 2020 WL 2813557 (S.D. Tex. May 28, 2020); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019); *Lett v. Decker*, 346 F. Supp. 3d 379 (S.D.N.Y.

[1] The statute does not give noncitizens detained at the border upon initial entry any right to a bond hearing. 8 U.S.C. § 1225(a)(1), (b).

2018), vacated on appeal as moot, 2020 WL 13558956 (2d Cir. July 30, 2020); *Maldonado v. Macias*, 150 F. Supp. 3d 788 (W.D. Tex. 2015). The permissible extent of such prolonged mandatory immigration detention under the Due Process Clause is a complicated issue, on which courts have employed differing analyses and reached disparate outcomes. *See, e.g., Alves v. U.S. Dep't of Justice*, No. 3:25-cv-306-KC, 2025 WL 2629763, at *2–4 (W.D. Tex. Sept. 12, 2025).

Many courts have understood this fact intensive inquiry in terms of three "primary factors": (1) the length of time the person has been detained, (2) which party is responsible for delays, and (3) whether the person has asserted defenses to removal. *Perez v. Decker*, No. 18-cv-5279, 2018 WL 3991497, at *4 (S.D.N.Y. Aug. 20. 2018) (citation omitted). The Court finds this framework persuasive and applies it here.

**A. Length of Detention**

Turning first to the length of detention, Rozlkova has been detained since her arrival to the United States on May 4, 2025. May 12, 2026, Advisory ¶1, ECF No. 6; Resp. 3. As of the date of this Order, she has been detained for about sixteen months. And her asylum claim is still pending before an IJ—the first stage of immigration proceedings.[2] She has a hearing scheduled for September 25, 2026. *See* 2d Resp. Ex. B.

Rozlkova has been detained for longer than other petitioners whose detention was held to be unreasonably prolonged, when their case remained pending at the IJ stage. In *Perez*, the court found detention of nine months was unreasonable, where it appeared likely to reach one year before an IJ considered the merits of the petitioner's asylum claim. 2018 WL 3991497, at *5.

---

[2] Once the IJ issues a decision, either party can appeal to the Board of Immigration Appeals ("BIA"), which can take months to reach a decision. 8 C.F.R. § 1003.1(b). Even then, further review of any BIA decision would remain available through a petition to the regional circuit court. 8 U.S.C. § 1252. All told, "some individuals must wait years to have their cases adjudicated." U.S. Immigration Courts and the Pending Cases Backlog, Congressional Research Service, https://www.congress.gov/crs_external_products/R/PDF/R47077/R47077.2.pdf (Apr. 25, 2022).

And in *Lett*, the court found that detention for ten months before an IJ determined the petitioner's claim was unreasonably prolonged. 346 F. Supp. 3d at 387–88. In at least one case, a court has found that detention for twelve months was prolonged, even where proceedings had advanced to the BIA stage. *See Da Silva v. Nielsen*, No. 18-mc-932, 2019 WL 13218461 (S.D. Tex, Mar. 29, 2019) (collecting cases). Here, again, Rozlkova has yet to receive a decision from an IJ, and she has been in custody for longer than the successful habeas petitioners in *Perez*, *Lett*, and *Da Silva*. Therefore, this factor weighs in favor a finding that Rozlkova's detention has become unreasonably prolonged.

**B. Comparative Responsibility**

Turning to the second factor—which party is responsible for the delays—neither party provides information as to this point. *See generally* Pet.; Resp.; Reply. Rozlkova has submitted her application for asylum. Pet. ¶ 13. However, it is unclear whether Rozlkova, the immigration court, the Government, or some combination thereof are responsible for the delay. Therefore, this factor weighs neutrally.

**C. Defenses to Removal**

The Court now turns to the third factor, whether the person has asserted defenses to removal. While there is limited information on Rozlkova's immigration case, she has filed an application for asylum. *Id.* If Rozlkova's asylum application is granted, it would be a complete defense to removal. *See Perez,* 2018 WL 3991497, at *5. The Court does not need to delve into the intricacies of asylum law and determine Rozklova's likelihood of success. Instead, the mere existence of an unadjudicated application weighs in favor of the petitioner. *See Lett*, 346 F. Supp. 3d at 388 (citations omitted). Thus, this factor weighs in her favor.

In sum, two factors weigh in favor of a finding of prolonged detention and one is neutral. Balancing the factors and the totality of the circumstances in this fact intensive inquiry, the Court finds that Rozlkova's detention without an individualized custody determination has become unconstitutionally prolonged. The Petition is granted in part on that basis. As to the appropriate form of relief, the Court joins the many district courts that have determined that mandating an individualized custody determination is the appropriate remedy for prolonged detention in the pre-final removal order context.[3] *See, e.g.*, *Da Silva*, 2019 WL 13218461, at *12; *Lett*, 346 F. Supp. at 388–89.

## III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, **on or before September 10, 2026,** Respondents shall either: (1) provide Rozlkova with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Rozlkova's continued detention; or (2) release Rozlkova from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before September 10, 2026**, Respondents shall **FILE** notice informing the Court whether Rozlkova has been released from custody. If Rozlkova has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

[3] Respondents make a number of legal arguments about the viability of due process claims for noncitizens subject to mandatory detention, all of which the Court has either already rejected in recent, similar cases or need not reach. *See, e.g., Gomez Hernandez v. ICE Field Off. Dir., El Paso, Tex.*, No. 3:26-cv-67-KC, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026) (citations omitted).

**IT IS FURTHER ORDERED** that if Rozlkova is released from custody, Respondents shall **RETURN** all of her personal property in their custody to her upon release. Such property includes, but is not limited to, identification documents.

**There will be no extensions of the September 10, 2026, deadlines**, unless they fall on a weekend or holiday, in which case, the deadlines are extended to the following business day.

**Respondents are CAUTIONED that a proceeding in which bond is denied by the IJ for lack of jurisdiction does not satisfy Respondents' obligation to provide a bond hearing in compliance with this Order, and therefore requires release from custody**.

**SO ORDERED**.

**SIGNED this 3rd day of September, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE